tion of law and justice to the enforcement of property rights.

The Eighth Circuit reached the same conclusion in Johnson v. City of St. Louis, *supra*. In that case a Missouri statute provided that a foreign corporation which had not qualified itself to do business locally must pay a penalty of $1,000, and was under a disability to "maintain actions in the courts of that state", if it engaged in local business. In a suit to recover for damage done to a building by excavation of adjoining areas, the trial court directed a verdict against the corporate plaintiff in reliance on the statute. The Circuit reversed saying,

> A construction of the qualifying statutes of Missouri which would deprive a foreign corporation of the property it owned or of the liability of him who injured or destroyed that property, unless such a foreign corporation complied with the qualifying statutes of that state and did business in the state thereunder, would make those statutes confiscatory and unconstitutional.

Whatever the minor variances between the statutes in *Johnson* and *Gamalski*, they cannot be the basis for avoiding the constitutional conclusion there reached. Confiscation of corporate property could not be a valid sanction for failure to pay franchise taxes if attempted on a direct basis, at least where the sums confiscated were in no way related to the amount of tax due. The same result achieved by indirect means is no less invalid, and as the legislature must be presumed to have intended and desired to enact constitutional legislation, this court is bound to adopt a construction which will render the statute valid if it is susceptible of such an interpretation, Port Const. Co. v. Government of Virgin Islands, 359 F.2d 663 (3 Cir. 1966).

No authority to the contrary has come to the court's attention, and relying on the two authorities cited, I conclude that § 533 has no application to suits sounding in tort.

To the extent that the parties have briefed issues beyond the scope of this opinion, I find it unnecessary to decide them, and confine my decision to the principles expressed herein.

### ORDER

Upon consideration of the joint motions of the defendants herein, seeking dismissal of their complaints in the above styled causes on the ground that the plaintiffs may not bring or maintain these actions by virtue of the provisions of Title 13, V. I. C. § 533(a), and the court being advised in the premises,

It is ordered that the said motions be, and they are hereby denied.

**Nile STANTON**
v.
**Roy L. ASH et al.**
**No. IP 74-313-C.**

United States District Court,
S. D. Indiana,
Indianapolis Division.
Nov. 4, 1974.

Nile Stanton and Ronald E. Elberger, Elberger & Stanton, Indianapolis, Ind., for plaintiff.

Carla A. Hills, Asst. Atty. Gen., New York City, Stanley B. Miller, U. S. Atty., Indianapolis, Ind., Harland F. Leathers, Dennis G. Linder, Dept. of Justice, Washington, D. C., for defendants.

## MEMORANDUM · OPINION

NOLAND, District Judge.

This action was commenced by the plaintiff on June 5, 1974. He has subsequently amended his complaint twice, once on June 13, 1974, as a matter of right under Rule 15, Federal Rules of Civil Procedure, and once again with leave of Court on September 20, 1974. Although defendant's motion to dismiss for lack of jurisdiction was filed prior to the final amendment, such is equally applicable to the complaint as finally amended. Extensive briefs have been filed by the parties on the issue of jurisdiction and the plaintiff has filed briefs on the question of joinder which the State of Indiana resisted. Two hearings were held where the parties presented evidence and argued their positions.

The Court has reviewed the evidence, the briefs, and having heard the argument of counsel must conclude that the plaintiff's second amended complaint be dismissed because he lacks standing to bring this action and because he seeks an advisory opinion. Thus, there is no jurisdiction to hear the suit because there is no case or controversy between the parties. The Court further concludes that plaintiff's complaint must be dismissed because an indispensable party may not be joined in this action.

Plaintiff alleges that he is a citizen, resident and taxpayer residing in Indianapolis, Indiana. He alleges that he is the owner and user of an automobile and makes frequent use of local, state and interstate highways in Indiana. He asserts that he is a product-consumer and purchaser of goods traded and sold in interstate commerce and that he has

a beneficial interest in the building and maintenance of roads designed to assure a proper national defense.

The defendant Ash is the Director of the Office of Management and Budget and the defendant Brinegar is the Secretary of Transportation.

Plaintiff alleges that this Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 1337 and 1361 as well as 5 U.S.C. § 702. He seeks a declaratory judgment pursuant to 28 U.S.C. §§ 2201–2202 that impoundment of funds by a federal officer is in violation of Article I, Section 8, Clauses 3, 7, 11 and 18 and Article II, Section 3 of the Constitution. He also seeks a declaratory judgment that the impoundment of Federal Aid Highway Act funds is in violation of 23 U.S.C. § 101 et seq.

Plaintiff has alleged that certain sums of money have been apportioned to the State of Indiana under the Highway Act which the defendants have illegally refused to release for obligation by freezing, impounding and sequestering those funds. He asserts that such action by the defendants has severely and irreparably injured him because highways, bridges, urban high density traffic programs, safety programs and other projects will not be implemented or completed, or will be delayed due to the acts of the defendants.

He further alleges that the acts of the defendants have deprived him of the right to travel and that he has been deprived of the myriad benefits of interstate commerce. He further alleges that he has been injured due to the inflation of highway costs and the interruption of the efficient obligation of funds by the State of Indiana.

For these reasons he seeks an order from this Court mandating the defendants to release for obligation all highway funds apportioned to Indiana for the fiscal year from 1973 to the present, and, a permanent injunction enjoining the defendants from impounding future apportionments under the Federal Aid Highway Act.

Plaintiff has asserted three distinct bases upon which he predicates his right to bring this suit. He asserts that he has standing because he is a taxpayer, a citizen, and because he is a person aggrieved within the meaning of a relevant statute by agency action. The Court will deal with the asserted bases seriatim.

Standing, under any of the plaintiff's asserted theories, is a part of the doctrine of justiciability and a necessary element for the Court to have jurisdiction under the case or controversy requirement of Article III of the Constitution. Schlesinger v. Reservist Committee to Stop the War, 418 U.S. 208, 94 S.Ct. 2925, 2929, 41 L.Ed.2d 706 (1974); Flast v. Cohen, 392 U.S. 83, 94, 88 S.Ct. 1942, 20 L.Ed.2d 947 (1968). As one commentator has noted "[M]uch has been written about standing; much is even beginning to be written about how much has been written." Baude, Sierra Club v. Morton: Standing Trees in a Thicket of Justiciability, 48 Ind.L.J. 197 (1973). Nevertheless, one point is clear from the cases: The analysis of a standing question must begin with the complaining party's alleged injury and his asserted status to litigate that injury. Flast v. Cohen, 392 U.S. 83, 100–101, 88 S.Ct. 1942, 20 L.Ed.2d 947 (1968); Baker v. Carr, 369 U.S. 186, 204, 82 S.Ct. 691, 7 L.Ed.2d 663 (1962).

Plaintiff's first asserted standing basis is as a citizen, a topic which the Supreme Court has recently addressed in Schlesinger v. Reservists Committee to Stop the War, 418 U.S. 208, 94 S.Ct. 2925, 41 L.Ed.2d 706 (1974).

As in Schlesinger, the plaintiff herein has sought to represent not only himself but a class of citizens and taxpayers which he has alleged encompasses over two million persons in the State of Indiana. The Supreme Court noted that in order to sue as a class representative it is absolutely necessary that the plaintiff ". . . possess the same interest and suffer the same injury shared by all members of the class he [purports to] represent." Id., 94 S.Ct. at 2930. Therefore, by seeking to represent a

class the plaintiff ". . . necessarily—and correctly—characteriz[es] [his] interest as 'undifferentiated' from that of all other citizens." *Id.*

Plaintiff's complaint demonstrates this undifferentiated interest which has been often called a generalized grievance. He asserts that he and the class are denied the benefits of interstate commerce; that they are denied the benefit of highway programs and projects; that they are injured due to the inflation of highway costs; and, that their right to travel has been infringed by the acts of the defendants. He has further alleged that the failure to release the funds is in violation of the executive duty to faithfully execute the laws.

■ It is quite clear that the only injury the plaintiff has asserted is one shared by all citizens and is injury in the abstract. He seeks to have the judiciary compel the executive to act in conformity with the constitutional clause requiring faithful execution of the law. Clearly that is an interest shared by all citizens. *Cf. Schlesinger, supra,* 94 S.Ct. at 2930; United States v. Richardson, 418 U.S. 166, 94 S.Ct. 2940, 41 L.Ed.2d 678 (1974); Ex parte Levitt, 302 U.S. 633, 58 S.Ct. 1, 82 L.Ed. 493 (1937); Fairchild v. Hughes, 258 U.S. 126, 42 S.Ct. 274, 66 L.Ed. 499 (1922).

■■ The Supreme Court has often said that abstract injury is not a sufficient predicate to invoke the judicial power. What is required is a personal stake in the outcome of the case different from the generalized stake of all citizens, Flast v. Cohen, *supra,* 392 U.S. at 100–101, 88 S.Ct. 1942, 20 L.Ed.2d 947, or injury in fact and personal to the plaintiff in the case of an attempt to obtain judicial review of agency action. *Schlesinger, supra,* 94 S.Ct. at 2931; O'Shea v. Littleton, 414 U.S. 488, 94 S.Ct. 669, 38 L.Ed.2d 674 (1974).

As the *Schlesinger* court pointed out:

"It is one thing for a court to hear an individual's complaint that certain specific government action will cause that person private competitive injury, [citation omitted] or a complaint that individual enjoyment of certain natural resources has been impaired by such action, [citation omitted], but it is another matter to allow a citizen to call on the courts to resolve abstract questions. The former provides the setting for a focused consideration of a concrete injury. In the latter, although allegations assert an arguable conflict with some limitation of the Constitution, it can be only a matter of speculation whether the claimed violation has caused concrete injury to the particular complainant." 94 S.Ct. at 2933.

In light of the *Schlesinger* decision and the necessarily generalized nature of the plaintiff's alleged injury, it is clear that he may not predicate his standing to prosecute this action on his citizenship.

Plaintiff's second basis for standing is as a taxpayer, and, as the *Schlesinger* court pointed out, "[C]onsideration of whether [plaintiff] [has] standing to sue as [a] taxpay[er] raises [a] different question from whether [he] may sue as [a] citizen." 94 S.Ct. at 2935.

■ The *Schlesinger* court reaffirmed the necessity of meeting the twin nexus test of Flast v. Cohen, *supra,* to establish taxpayer standing. That test, as set out in *Flast,* requires a challenge by a taxpayer directed against Congressional spending power under the taxing and spending clause of Article I, Section 8. Flast v. Cohen, *supra,* 392 U.S. at 102–103, 88 S.Ct. 1942, 20 L.Ed.2d 947.

■ It is abundantly clear that the plaintiff has not challenged any enactment under Article I, Section 8. In fact, what he seeks to do is force the executive to spend money and not oppose a statute authorizing its expenditure. Here, as in *Schlesinger, supra,* 94 S.Ct. at 2935, the plaintiff has failed to meet the twin nexus test of *Flast* and he has no standing to bring this action as a

taxpayer. *See also* United States v. Richardson, 418 U.S. 166, 94 S.Ct. 2940, 41 L.Ed.2d 678 (1974).

Plaintiff's third basis for standing to bring this suit is alleged to exist by virtue of his assertion that he, and his class, are persons aggrieved by agency action within the meaning of a relevant statute as contemplated by 5 U.S.C. § 702 of the Administrative Procedures Act.

■ To be classified as a person aggrieved under the Administrative Procedures Act, the party seeking to prove his standing must show that he has suffered an injury in fact, and, that his alleged interests are those sought to be protected by the statute involved. United States v. SCRAP, 412 U.S. 669, 93 S.Ct. 2405, 37 L.Ed.2d 254 (1973); Sierra Club v. Morton, 405 U.S. 727, 92 S.Ct. 1361, 31 L.Ed.2d 636 (1972); Massey Services, Inc. v. Fletcher, 348 F.Supp. 171 (N.D.Cal.1972); Nuclear Data, Inc. v. Atomic Energy Commission, 344 F. Supp. 719 (N.D.Ill.1972). *Cf.* Schlafly v. Volpe, 495 F.2d 273 (7th Cir. 1974).

■ The Court has already elaborated on the generalized nature of plaintiff's injury. While it is true that the "categories of judicially cognizable injury" have been broadened, *Schlesinger, supra,* 94 S.Ct. at 2931, the Supreme Court has made it clear ". . . that the broadening of *categories* 'is a different matter from abandoning the requirement that the party seeking review must himself have suffered an injury.'" *Id.,* citing Sierra Club v. Morton, 405 U.S. 727, 738, 92 S.Ct. 1361, 31 L.Ed. 2d 636 (1972) (emphasis in original). That injury must be concrete and not abstract because if abstract the Court may not entertain the suit. O'Shea v. Littleton, 414 U.S. 488, 94 S.Ct. 669, 38 L.Ed. 2d 674 (1974); Duba v. Schuetzle, 303 F.2d 570 (8th Cir. 1962). The Administrative Procedures Act cannot confer jurisdiction on the Court in excess of its Article III power. South Suburban Safeway Lines, Inc. v. Chicago, 416 F.2d 535 (7th Cir. 1969); Nuclear Data, Inc.

v. Atomic Energy Commission, 344 F. Supp. 719 (N.D.Ill.1972).

■ It is clear that the highway act does not contemplate individuals such as the plaintiff bringing actions such as this. First, there is no provision granting that right to individual citizens. Second, it is quite clear that the recipient of the funds in question is the State of Indiana or one of its designated agencies. As one court in this circuit has noted, even if plaintiff is the ultimate beneficiary of a federal program, he is not the direct recipient of the funds and, unless granted the right by statute, has no right to judicial review of expenditure decisions. Green Street Association v. Daley, 250 F.Supp. 139, 146 (N.D.Ill. 1966), aff'd, 373 F.2d 1 (7th Cir.), cert. denied, 387 U.S. 932, 87 S.Ct. 2054, 18 L.Ed.2d 995 (1967). *Cf.* Schlafly v. Volpe, 495 F.2d 273 (7th Cir. 1974).

■ The right to sue does not accrue to a person who does not possess it merely because the appropriate plaintiff, in this case the State of Indiana, is unwilling to assert it. Sierra Club v. Hickel, 433 F.2d 24, 32 (9th Cir. 1970), aff'd, 405 U.S. 727, 92 S.Ct. 1361, 31 L.Ed.2d 636 (1972). The Administrative Procedures Act is not a jurisdictional scheme which permits a plaintiff to explore a governmental program in search of his particularized grievance. That much is crystal clear from the recently decided impoundment cases where the courts found standing for the plaintiff to exist. *See* Illinois ex rel. Bakalis v. Weinberger, 368 F.Supp. 721 (N.D.Ill.1973); Pennsylvania v. Weinberger, 367 F.Supp. 1378 (D.D.C.1973); Sioux Valley Empire Electrical Association, Inc. v. Butz, 367 F.Supp. 686 (D. S.D.1973); National Council of Community Mental Health Centers, Inc. v. Weinberger, 361 F.Supp. 897 (D.D.C. 1973); State Highway Commission of Missouri v. Volpe, 347 F.Supp. 950 (W. D.Mo.1972), aff'd, 479 F.2d 1099 (8th Cir. 1973). The Court must, therefore, conclude that the plaintiff herein is not an aggrieved person nor a person aggrieved within the meaning of a rele-

vant statute and he has no standing to bring this action.

While plaintiff's case or controversy is defective for lack of standing, it is further defective because it is clear that he seeks an advisory opinion from this Court.

As the Supreme Court recently reiterated:

"As far back as Marbury v. Madison, 1 Cranch 137, 2 L.Ed. 60 (1803), this Court held that judicial power may be exercised only in a case properly before it—a 'case or controversy' not suffering any of the limitations of the political question doctrine, not then moot or calling for an advisory opinion." United States v. Richardson, 418 U.S. 166, 171, 94 S.Ct. 2940, 2943, 41 L.Ed.2d 678 (1974).

█ The rule against federal courts issuing advisory opinions is as old as the republic and goes to the heart of justiciability. In short, no justiciable controversy is presented when a party seeks only an advisory opinion. Flast v. Cohen, 392 U.S. 83, 85, 88 S.Ct. 1942, 20 L.Ed.2d 947 (1967); Muskrat v. United States, 219 U.S. 346, 31 S.Ct. 250, 55 L.Ed. 246 (1911); Hayburns Case, 2 Dallas 409, 1 L.Ed. 436 (1796).

█ The hypothetical and advisory nature of the plaintiff's claim is easily discernible. Plaintiff asserts that he has been injured by the failure of the defendants to release impounded highway funds. However, it is amply clear that the State has had no project denied by the Federal Highway Administration. Further, the uncontradicted fact is that all money apportioned to Indiana for prior fiscal years, as well as a major portion of the current fiscal year's funds, are available to Indiana for obligation. In short, Indiana may ask for all the funds it may, by law, have, and it has received all that it has asked for. Thus, the question plaintiff presents is conditioned on events that have not occurred and is so hypothetical as to be non-justiciable. (See Provan II affidavit)

█ In addition, the State is the only agency, through its highway administration, which may ask for, or not ask for, the federal funds. Ind.Code § 8–13–5–21 (1971). It is clear that this Court has no power to compel the State of Indiana to seek federal funds if it chooses, for whatever reason, not to do so. In other words, even if this Court were to rule that impoundment of funds by federal officers is improper, the Court could not remedy the plaintiff's alleged injuries because the Court cannot force the State to seek the funds to use to correct the alleged conditions causing the injury. Until the State seeks funds for a specific project and is denied those funds for a wrongful reason, the question is not a judicially cognizable one.

Such a conditional set of circumstances is a classic situation making the advisory opinion doctrine applicable even in the face of the Declaratory Judgment Act. Longshoremen's Union v. Boyd, 347 U.S. 222, 74 S.Ct. 447, 98 L.Ed. 650 (1953). Therefore, this action may not be entertained by this Court because it seeks an advisory opinion.

Finally, this action must be dismissed because a party needed for a just adjudication is absent and joinder of that party is not feasible—that party being indispensable.

█ The party needed for a just adjudication is the State of Indiana, because in its absence complete relief may not be afforded the litigants herein. However, it is clear that joinder is not feasible because the State is immune from joinder as a defendant in this action due to the Eleventh Amendment. Hans v. Louisiana, 134 U.S. 1, 10 S.Ct. 504, 33 L.Ed. 842 (1890).

Although the plaintiff had earlier moved to join the State as an involuntary plaintiff under Rule 19(a), a motion which the State vigorously opposed, it was clear that this case was not the proper case for such joinder and the motion was denied on July 12, 1974. Plaintiff has never requested that the State be joined as a defendant.

Involuntary joinder as a plaintiff is only permissible if the requirements of Independent Wireless Telegraph Company v. Radio Corporation of America, 269 U.S. 459, 46 S.Ct. 166, 70 L.Ed. 357 (1926), are met. In order to be forced to join as an involuntary plaintiff, an absent party must be both beyond the jurisdiction of the Court and the party seeking joinder must be entitled to use the non-party's name to prosecute the action. Eikel v. States Marine Lines, Inc., 473 F.2d 959 (5th Cir. 1973); Coast v. Hunt Oil Company, 195 F.2d 870 (5th Cir.), cert. denied, 344 U.S. 836, 73 S.Ct. 46, 97 L.Ed. 651 (1952). Clearly the plaintiff herein has no right to force the State of Indiana to bring this action in the federal court and he has no right to prosecute the action in the State's name.

Having determined that a party needed for a just adjudication is absent and that joinder is not feasible, the Court must determine if, "in equity and good conscience" the action should proceed or be dismissed because the absent party is indispensable.

Rule 19(b) sets out criteria to aid the Court in this choice. Clearly any judgment rendered without the State could be prejudicial to the defendants because of the possibility of an identical suit being brought by the State. There is no way by which the Court may lessen that possibility. Equally obvious is the inability of the Court to give adequate relief to the plaintiff in the state's absence. Finally, plaintiff does have a remedy for his alleged injuries although it would appear to be political and not judicial. Therefore the Court concludes that this action must be dismissed due to the absence of an indispensable party whose joinder is not feasible.

The increase in litigation by private citizens seeking to air their grievances about the conduct of government is self-evident. However, not every citizen's complaint has a judicial remedy. Many matters are, by their very nature, better left to the political process. The decision to spend, not to spend, how much to spend and where to spend is one such issue that, absent very special circumstances, belongs to the legislative and executive branches of government.

While marked changes have clearly evolved in the conduct of the federal judiciary since the Judiciary Act of 1789, certain principles have remained since the decisions rendered at the very beginning of the republic began the process of delimiting the power of the federal judiciary. One such principle which a court must bear in mind when dealing with questions of the type argued in this case is that the balance of power in the federal system is often at stake. The decision by a federal court will often result in the expansion or contraction of the power of one of the other co-equal branches.

That the other branches of the federal government are capable of dealing with the difficult questions often attempted to be presented to the courts is evident from the recent passage by the Congress of the Congressional Budget and Impoundment Control Act of 1974, Public Law 93–344, July 12, 1974, 88 Stat. 297.

This determination by the Congress to exercise its power over the purse, a power vested in the House of Representatives which Madison called "that powerful instrument" for reducing the "overgrown prerogatives of the other branches of the government," The Federalist No. 58, at 359 (Mentor edition 1961), indicates quite clearly the nature of the problem often faced by courts in citizen suits. A decision by a federal court which invades the proper constitutional function of the legislative and executive branches in derogation of the separation of powers, therefore, should not be rendered.

For the reasons set out herein, the plaintiff's second amended complaint is dismissed.